V James DeSimone, SBN 119668
vjdesimone@gmail.com
Michael D. Seplow, SBN 150183
mseplow@gmail.com
Courtney Abrams, SBN 265742
cabrams@sdshh.com
SCHONBRUN DESIMONE SEPLOW
HARRIS HOFFMAN & HARRISON, LLP
723 Ocean Front Walk
Venice, CA 90291
Telephone: 310- 396-0731
Fax: 310- 396-0731

LAW OFFICES OF THOMAS W. FALVEY
Thomas W. Falvey, SBN 65744
thomaswfalvey@gmail.com
J.D. Henderson, SBN 235767
jdlaw@charter.net
301 North Lake Avenue, Suite 800
Pasadena, California 91101
Telephone: (626) 795-0205
Facsimile: (626) 795-3026

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK SANTIAGO, ROBERT SCHUSSEL, <br><br> Plaintiffs, <br><br> vs. <br><br> AMDOCS, INC. and DOES 1 through 10, inclusive <br><br> Defendants. | Case No: 3:10-cv-04317-SI <br><br> [CLASS ACTION] <br><br> **PLAINTIFFS' OPPOSITION TO AMDOCS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF PATRICK SANTIAGO AND COURTNEY ABRAMS IN SUPPORT THEREOF** <br><br> **Date: October 28, 2011** <br> **Time: 9:00 a.m.** <br> **Courtroom: 10** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II. RELEVANT DISPUTED FACTS AND PROCEDURAL HISTORY ..............................2

    A.  The Nature of Plaintiffs' Employment with Amdocs..............................................2

III. AMDOCS HAS FAILED TO ESTABLISH THERE ARE NO GENUINE ISSUES
      OF MATERIAL FACT AS TO THE APPLICABILITY OF FLSA EXEMPTIONS
      AND WHETHER PLAINTIFFS WAIVED THEIR STATE LAW, CLASS AND
      COLLECTIVE CLAIMS ...............................................................................................4

    A.  Legal Standard .......................................................................................................4

    B.  Genuine Issues of Material Fact Exist as to Whether Plaintiffs Were Properly
        Classified as Exempt...............................................................................................5

        1.  There Are Genuine Issues of Material Fact as to Whether Plaintiffs
             Were Properly Classified as Exempt Under the Computer Employee
             Exemption..................................................................................................5

        2.  There Are Genuine Issues of Material Fact as to Whether Plaintiffs
             Were Properly Classified as Exempt Under the Administrative
             Exemption..................................................................................................8

    C.  Because Defendant Failed to Plead The Affirmative Defense of Settlement
        and Release, It Has Waived That Defense...............................................................12

    D.  Plaintiffs' Severance Agreements Are Not Valid or Enforceable...........................16

        1.  The Severance Agreements Violate the National Labor Relations
             Act.............................................................................................................16

        2.  A Contract That Interferes with Concerted Activity in Violation of the

NLRA Is Void.........................................................................................17

3.    There Was Never Any Waiver of Wage Claims Here...............................18

E.    Plaintiffs' Severance Agreements Do Not Prohibit Class or

Collective Actions...................................................................................19

IV.    CONCLUSION............................................................................................21

ii

1

# TABLE OF AUTHORITIES

*Arizona v. California*

  (2000) 530 US 392, 410...................................................................................................*13*

*Arizonans for Official English v. Arizona*

  (1997) 520 U.S. 43, 68 n. 23..........................................................................................*15*

*Bagwell v. Florida Broadband, LLC*

  385 F. Supp. 2d 1316, 1323 (S.D. Fla. 2005)........................................................................*8*

*Balint v. Carson City*

  180 F.3d 1047, 1054 (9th Cir. 1999)..................................................................................*4*

*Barrentine v. Arkansas-Best Freight System, Inc.*

  450 US 728, 740 (1981)...............................................................................................*20, 21*

*Bergquist v. Fid. Info. Services, Inc.*

  399 F. Supp. 2d 1320, 1330 (M.D. Fla. 2005)

  aff'd, 197 Fed. Appx. 813 (11th Cir. 2006)...................................................................*5, 7-8*

*Bothell v. Phase Metrics, Inc.*

  299 F.3d 1120 (9th Cir. 2001).....................................................................................*11, 12*

*Brooklyn Savings Bank v. O'Neil*

  324 U.S. 697, 709-711 (1945).........................................................................................*20*

*California v. United States*

  271 F.3d 1377, 1383 (Fed. Cir. 2001)...............................................................................*17*

*Carroll v. Acme–Cleveland Corp.*

  (7th Cir. 1992) 955 F.2d 1107, 1115.................................................................................*13*

*In re Cellular 101, Inc.*

  (9th Cir. 2008) 539 F.3d 1150, fn. 2....................................................................*13-14, 15, 16*

*Celotex Corp. v. Catrett*

  477 U.S. 317, 323(1986)..................................................................................................*4*

iii

1 | *Clarke v. JPMorgan Chase Bank, N.A.*
2 |     2010 WL 1379778, at \*17 (S.D.N.Y. Mar. 26, 2010)................................................................8
3 | *Cooke v. General Dynamics Corp.*
4 |     993 F.Supp. 56, 65 (D.Conn.1997)....................................................................................11
5 | *Eicher v. Advanced Business Integrators, Inc.*
6 |     151 Cal.App.4th 1363, 1374-75 (2007)..............................................................................10
7 | *Gilmer v. Interstate/Johnson Lane Corp.*
8 |     500 U.S. 20 (1991)..............................................................................................................20
9 | *Gould v. Bowyer*
10 |     11 F.3d 82, 84 (7th Cir.1993)............................................................................................15
11 | *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*
12 |     126 F.3d 339, fn. 2 (D.C.Cir.1997)....................................................................................14
13 | *Hohnke v. U.S.*
14 |     69 Fed.Cl. 170, 175 -176 (2005).................................................................................19, 21
15 | *Hunter v. Sprint Corp.*
16 |     453 F.Supp.2d 44, 52 (D.D.C. 2006)....................................................................................7
17 | *Hurd v. Hodge*
18 |     334 U.S. 24, 34-35, 68 S.Ct. 847, 853, 92 L.Ed. 1187 (1948)............................................17
19 | *Ingle v. Circuit City Stores, Inc.*
20 |     328 F.3d 1165, 1176 (9th Cir. 2003)..................................................................................18
21 | *Ingraham v. United States*
22 |     808 F.2d 1075, 1079 (5th Cir. 1987)..................................................................................13
23 | *Kaiser Steel Corp. v. Mullins*
24 |     455 U.S. 72, 77-78, 102 S. Ct. 851, 856 (1982)..................................................................17
25 | *Kurian v. U.S. Mtg. Capital, Inc.*
26 |     2008 WL 2405998, 9 (Cal.App. 2 Dist. 2008)....................................................................*19*

*Lynn's Food Stores, Inc. v. United States, etc.*
    679 F.2d 1350, 1352 (1982)...........................................................................................20, 21

*Martin v. Indiana Michigan Power Co.*
    381 F.3d 574, 580 (6th Cir. 2004)........................................................................................7, 9

*Mastrobuono v. Shearson Lehman Hutton, Inc.*
    514 U.S. 52, 62-63 and n. 9 (1995).........................................................................................19

*Metcalf v. Golden (In re Adbox, Inc.)*
    488 F.3d 836, 841 (9th Cir.2007)...........................................................................................15

*Mitchell v. Kentucky Finance Co.*
    359 U.S. 290, 295 (1959).........................................................................................................5

*Morrison v. Mahoney*
    399 F.3d 1042, 1046 (9th Cir.2005)..................................................................................12, 14

*Paul v. Petroleum Equip. Tools Co.*
    708 F.2d 168, 170 (5th Cir. 1983)...........................................................................................5

*Perry v. Thomas*
    482 U.S. 483, 492-493, n. 9 (1987).........................................................................................19

*Schulte Co. v. Gangi*
    328 U.S. 108, 114-115 (1945)................................................................................................20

*Turner v. Human Genome Sci., Inc.*
    292 F.Supp.2d 738, 742 (D. Md. 2003)..................................................................................10

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*
    809 F.2d 626, 631 (9th Cir. 1987)...........................................................................................4

*United States v. Olano*
    507 U.S. 725, 731 (1993).......................................................................................................14

1

**STATE CASES**

2  *Keating v. Sup. Ct.*

3      31 Cal.3d 584, 609 (1982)................................................................................................18

4  *Raischell & Cotrell, Inc. v. Workmen's Comp. App. Bd.*

5      249 Cal.App.2d 991, 997 (1967)......................................................................................14

6  *Weil v. California Bank*

7      219 Cal. 538, 541 (1933)................................................................................................18

8

9

**FEDERAL STATUTES**

10  213 U.S.C.

11      § (a)(1)...............................................................................................................5, 6 , 8, 12

12      § (a)(17)....................................................................................................................5, 6, 8

13  29 U.S.C

14      § 13(a)(1)........................................................................................................................8

15      § 13(a)(17)....................................................................................................................5,6

16      § 157........................................................................................................................16-17

17      § 158(a)(1)....................................................................................................................17

18      § 213...............................................................................................................................1

19      § 213(a)(1)................................................................................................................5,8,12

20      § 213(a)(17).................................................................................................................5,6

21  29 C.F.R.

22      § 541.200....................................................................................................................8 - 9

23      § 541.201........................................................................................................................9

24      § 541.202......................................................................................................................11

25      § 541.207(b)(1) and (c).................................................................................................12

26      § 541.400(a)....................................................................................................................6

27

28

vi

§ 541.400(b)..................................................................................................................5

§ 541.704..............................................................................................................6, 11

FED.R.CIV.P

56 (c)..........................................................................................................................4

8 (a)(c)......................................................................................................................12

Cal. Civ. Code

§1654........................................................................................................................18

1                       **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.     INTRODUCTION**

3        Defendant's Motion for Summary Judgment ("MSJ" or "Motion") has wholly failed to

4 establish that there are no genuine issues of material fact such that Plaintiffs' claims fail as a

5 matter of law.

6        First, Plaintiffs' deposition testimony and declarations demonstrate that they are neither

7 exempt under the Computer Employee Exemption, nor under the Administrative Exemption

8 under 29 U.S.C. § 213. Plaintiffs performed their job duties – which included providing

9 computer support, trouble shooting, testing related to repairs, problem-solving and application

10 changes, and technical services – according to previously established procedures and guidelines.

11 As both Plaintiffs have stated time and again – their job duties were akin to "rubber stamping"

12 within a well-defined set of parameters from which they could not deviate.

13        Second, Defendant's argument as to the severance agreements Plaintiffs signed upon the

14 termination of their employment with Amdocs is a red-herring. Defendant has long since waived

15 this affirmative defense, failing to plead it in no less than two (2) separate answers, and two (2)

16 separate motions to dismiss. Indeed, Plaintiffs and their counsel have invested substantial time

17 and money into this lawsuit, and this Court has invested a significant amount of time into hearing

18 and adjudicating their claims. To raise this issue now, after such a prolonged period of time

19 unfairly prejudices Plaintiffs, the Court, and the multitude of opt-in collective action members

20 who have risked their current and future employment prospects to litigate their claims.

21        Third, even if this Court were to find that Defendant did not waive this affirmative

22 defense, Plaintiffs' severance agreements are neither valid, nor enforceable. Section 7 of the

23 NLRA provides workers a right to bring joint, collective and class legal actions. Accordingly,

24 the severance agreement's ban on "any action brought by any third-person party or equity against

25 Amdocs" clearly violates this provision.

26        Finally, the releases Plaintiffs signed do not bar class or collective actions. There is no

27 language in the severance agreements waiving class or collective actions, nor even a mention of

28 the FLSA. Accordingly, Defendant's Motion for Summary Judgment should be denied.

## II.   RELEVANT DISPUTED FACTS AND PROCEDURAL HISTORY

This case involves Amdocs Information Technology ("IT") employees who were misclassified as exempt, and who were uniformly and systematically deprived by Defendant of overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the California Labor Code. Plaintiffs Patrick Santiago and Robert Schussel ("Plaintiffs") were IT employees at Amdocs, where their job duties included providing computer support, testing related to repairs and problem-solving, troubleshooting and/or technical services. *See* Declaration of Robert Schussel ("Schussel Decl.") at ¶ 4, Attached as Exhibit C to the Declaration of Courtney Abrams ("Abrams Decl."). Patrick Santiago worked at Amdocs as a Quality Control Tester/Analyst from approximately May 2007 to December 2008 (Declaration of Patrick Santiago ("Santiago Decl.") at ¶ 2), and Robert Schussel worked as a Quality Control Tester/Analyst, and later a Senior Test Engineer, from May 16, 2007 to April 24, 2009. Schussel Decl. at ¶ 2.

### A.   The Nature of Plaintiffs' Employment with Amdocs

Throughout Amdocs' Motion for Summary Judgment ("MSJ"), Amdocs wholly distorts and misrepresents the nature of Plaintiffs' employment and duties. Specifically, Amdocs erroneously asserts Plaintiff Santiago's role was "to determine whether the code was properly developed to achieve the desired change." MSJ at 3:3-5. What Santiago actually testified to was that he was troubleshooting and testing the program to see if it worked according to developer specifications. Specifically, Mr. Santiago testified to running the system "to identify problems with the code" and "to make sure the changes work." Santiago Depo. at 32:11-19; Santiago Decl. at ¶ 4 ("My primary job duties included providing computer support, trouble shooting, testing related to repairs, problem-solving and application changes, and technical services due to project work."). If Mr. Santiago identified a problem, he would return to the developer, not the customer or client, to record this change. Santiago Depo. at 32:15-19. Amdocs conveniently omits that the only way Santiago knew how to do this was "according to the procedures [he and other testers] were given." Santiago Depo. at 51:8-9. So basic was Santiago's work that when Amdocs' counsel asked if someone like her (Amdocs' counsel) could "come in and sit down and

2.

1  write a test case," Santiago testified, "yes, there's a sort of a manual of procedures." Santiago

2  Depo. at 51:16-20. Indeed, throughout his deposition, Santiago repeatedly testified to using these

3  procedures and manuals to perform his job, characterizing his job duties as "**pretty much kind**

4  **of rubber stamping** and just going through knowing the requirements" that he and others were

5  given by developers. Santiago Depo. at 52:24-25 (emphasis added), 49:14-50:1, 51:8-9, 52:10-

6  19, 66:18-23; *see also* Santiago Decl. at ¶4 ("I performed my job duties according

7  to procedures and guidelines established by my employer and I did not have the discretion or

8  independent judgment to deviate from these guidelines.").

9  While Amdocs asserts that Mr. Santiago was "free from regular supervision," (MSJ at

10  3:10-11) in reality, Mr. Santiago's supervisors exercised substantial control over him. For

11  instance, Christine Ashcraft, one of Mr. Santiago's supervisors who worked out of St. Louis,

12  often set longer workdays and workweeks for Mr. Santiago. Santiago Depo. at 58:19-21.

13  Indeed, while Amdocs seeks to highlight the fact that two of Mr. Santiago's supervisors did not

14  work in the same location as Mr. Santiago (MSJ at 3:14-15), Amdocs omits that these very same

15  supervisors would routinely tell Mr. Santiago to work through his lunch periods. Santiago Depo.

16  at 75:12-77:4; 117:2-118:14.

17  Amdocs similarly misstates the nature of Mr. Schussel's job duties and employment with

18  Amdocs. Like Mr. Santiago, Mr. Schussel's primary job duty included troubleshooting and

19  testing software. Schussel Depo. at 82:16-20; 136:1-6; Schussel Decl. at ¶ 4. Moreover, like Mr.

20  Santiago, Mr. Schussel testified that he only performed testing within a firm set of guidelines.

21  Schussel Depo. at 167:2-7. Specifically, when counsel for Defendant asked Mr. Schussel if

22  anyone at Amdocs told him how to test the programs, he testified, "there were certain parameters

23  that you had to work with . . . it was all pretty well standard . . . ." Schussel Depo. at 166:15-23.

24  When counsel for Defendant pressed Mr. Schussel and asked if, within the parameters, Mr.

25  Schussel had discretion to test the program "as he saw fit," Mr. Schussel responded, "**you had to**

26  **use those parameters . . . You couldn't go outside of that. There would be no reason to.**"

27  Schussel Depo. at 166:24-167:7 (Emphasis added). Significantly, when Mr. Schussel was asked

28  what would make somebody a successful tester, he testified, "just basically someone that looks at

3.

1  the requirements that need to be completed ..." Schussel Depo. at 167:18-19.

2  Amdocs further misrepresents Mr. Schussel's testimony by asserting he served as a
3  "project test lead," which "resulted in additional responsibilities" MSJ at 4:8-9. In reality, Mr.
4  Schussel testified he did **not** have additional responsibilities and that he was "doing pretty much
5  the same types of duties." Schussel Depo. at 147:9-16. As Mr. Schussel stated in his declaration
6  in support of Plaintiffs' Motion for Conditional Collective Certification, Mr. Schussel
7  "performed [his] job duties according to procedures and guidelines established by [Amdocs] and
8  [he] did not have the discretion or independent judgment to deviate from these guidelines."
9  Schussel Decl. at ¶ 4. Therefore, Mr. Schussel had no type of managerial responsibility or
10  duties, and neither Plaintiff exercised any type of meaningful discretion or independent
11  judgment.

12

13  **III.    AMDOCS HAS FAILED TO ESTABLISH THERE ARE NO GENUINE ISSUES**
14  **OF MATERIAL FACT AS TO THE APPLICABILITY OF FLSA EXEMPTIONS**
15  **AND WHETHER PLAINTIFFS WAIVED THEIR STATE LAW, CLASS AND**
16  **COLLECTIVE CLAIMS.**

17  **A.    Legal Standard**

18  Federal Rule of Civil Procedure 56(c) authorizes summary judgment if "no genuine
19  issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter
20  of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v.*
21  *Catrett*, 477 U.S. 317, 323(1986). Once the moving party does so, the nonmoving party must
22  "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id.* at
23  324. The court must "not weigh the evidence or determine the truth of the matter, but only
24  determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047,
25  1054 (9th Cir. 1999) (citation omitted). The court must view the inferences drawn from the facts
26  "in the light most favorable to the nonmoving party." *T.W. Elec. Serv., Inc. v. Pacific Elec.*
27  *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Thus, reasonable doubts about the
28  existence of a factual issue should be resolved against the moving party. *Id.*

4.

**B.** **Genuine Issues of Material Fact Exist as to Whether Plaintiffs Were Properly Classified as Exempt.**

Defendant argues that Plaintiffs are exempt under both the Computer Employee exemption and the Administrative exemption. MSJ at 9-13. Defendant is wrong. Exemptions under the FLSA are to be narrowly construed against the employer. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959). The employer has the burden of establishing that it is entitled to the exemption. *Paul v. Petroleum Equip. Tools Co.*, 708 F.2d 168, 170 (5th Cir. 1983). Here, genuine issues of material fact exist as to whether Plaintiffs were properly classified as exempt, and Amdocs has utterly failed to meet its burden as to either the administrative exemption under 213 U.S.C. § (a)(1) or the computer employee exemption under 213 U.S.C. § (a)(17).

**1.** **There Are Genuine Issues of Material Fact as to Whether Plaintiffs Were Properly Classified as Exempt Under the Computer Employee Exemption.**

"[C]omputer employees can be exempt under the professional exemption in 29 U.S.C. § 213(a)(1) if they meet the minimum salary requirements of $455.00 a week, or under the computer employee exemption, 29 U.S.C. § 213(a)(17), if they meet the minimum hourly requirement of $27.63." *Bergquist v. Fid. Info. Services, Inc.*, 399 F. Supp. 2d 1320, 1330 (M.D. Fla. 2005) aff'd, 197 Fed. Appx. 813 (11th Cir. 2006). Here, Amdocs wholly conflates the exemption under 29 U.S.C. § 213(a)(1) with the exemption under 29 U.S.C. § 213(a)(17).

Specifically, Amdocs argues that the 29 U.S.C. § 213(a)(17) exemption applies to "any computer employee compensated on a salary or fee basis at a rate of not less than $455 per week," (MSJ at 10:13-16). This is a false statement of law. Federal regulations explicitly state that the computer employee exemption under § 13(a)(17) applies only to a "computer employee compensated on an **hourly basis** at a rate not less than $27.63 an hour." 29 C.F.R. § 541.400(b) (emphasis added). **Amdocs did not compensate Plaintiffs on an hourly basis**, therefore Amdocs cannot even establish the 13(a)(17) exemption applies, much less demonstrate that there

5.

are no genuine issues of material fact.[1/] Santiago Depo. at 40:17-19; Schussel Depo. at 72:16-18; Santiago Decl. at ¶ 3 ("I was a salaried employee, meaning I was not paid on an hourly basis."). Importantly, the threshold of $455 per week <u>only applies</u> to the 13(a)(1) exemption, not the 13(a)(17) exemption. 29 C.F.R. § 541.400(a).

However, Plaintiffs do not qualify for the computer employee exemption pursuant to 29 U.S.C. § 213(a)(1). Federal regulations are clear: "13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." 29 C.F.R. § 541.704. This is exactly what Plaintiffs did. Santiago only knew how to perform his duties "according to the procedures [he and his co-workers ] were given." Santiago Depo. at 51:8-9; Santiago Decl. at ¶ 4. Santiago repeatedly testified to using these procedures and manuals to perform his job, characterizing his job duties as "**pretty much kind of rubber stamping** and just going through knowing the requirements" that he and others were given by developers. Santiago Depo. at 52:24-25 (emphasis added), 49:14-50:1, 51:8-9, 52:10-19, 66:18-23.

The same is true of Mr. Schussel's job duties. Like Santiago, Schussel only performed testing within a firm set of guidelines. Schussel Depo. at 167:2-7. Significantly, when Schussel was asked what would make somebody a successful tester, he testified, "just basically someone that looks at the requirements that need to be completed ..." Schussel Depo. at 167:18-19. Schussel further testified he "had to use those parameters" and "couldn't go outside of that."

---

1. While Defendant does not argue that Plaintiffs were compensated on an hourly basis, even if Plaintiffs' salaries were divided by the number of hours worked to determine their hourly wage, there is still a genuine issue of material fact as to whether they were compensated at a rate of more than $27.63 per hour, given that Plaintiffs worked a significant amount of overtime. Indeed, Mr. Schussel's supervisor directed him "to do whatever was necessary to get [his] work done, and told [him] that if it meant working more than 60 hours per week, or even 90-100 hours," then that is what he had to do. Schussel Decl. at ¶ 6. Patrick Santiago similarly testified to extensive amounts of overtime, including being told to work through meal and rest periods. Santiago Depo. at 76:13-22, 77:7-11, 108:3-7, 132:5-11, 140:3-14; Santiago Decl. at ¶ 5. Given that Mr. Santiago only made $62,000 annually (Santiago Depo. at 40:17-19) and Mr. Schussel made, at most, $67,000 per year (Schussel Depo. at 72:16-18), Plaintiffs' hourly wage was far below $27.63 per hour, and thus there is a genuine issue of material fact as to whether Plaintiffs qualify for the computer employee exemption under 29 U.S.C. § 213(a)(17).

6.

1  Schussel Depo. at 167:2-7. As Mr. Schussel stated in his declaration in support of Plaintiffs'

2  Motion for Conditional Collective Certification, Mr. Schussel "performed [his] job duties

3  according to procedures and guidelines established by [Amdocs] and [he] did not have the

4  discretion or independent judgment to deviate from these guidelines." Schussel Decl. at ¶ 4.

5      Amdocs also misrepresents the nature of Plaintiffs' duties. Amdocs asserts Plaintiff

6  Santiago's role was "to determine whether the code was properly developed to achieve the

7  desired change." MSJ at 3:3-4. What Santiago actually testified to was that he was simply

8  performing troubleshooting and testing of the program to see if it worked according to developer

9  specifications. Specifically, Mr. Santiago testified to running the system "to identify problems

10 with the code" and "to make sure the changes work." Santiago Depo. at 32:11-19; see also

11 Santiago Decl. at ¶ 4. Amdocs conveniently omits that the only way Santiago knew how to do

12 this was "according to the procedures [he and other testers] were given." Santiago Depo. at 51:8-

13 9. Amdocs similarly misstates Plaintiff Schussel's job duties. Like Santiago, Schussel's primary

14 job duty included troubleshooting testing software. Schussel Depo. at 82:16-20; 136:1-6;

15 Schussel Decl. at ¶ 4. Moreover, like Santiago, Schussel only performed testing within a firm set

16 of guidelines. Schussel Depo. at 167:2-7.

17     While Amdocs repeatedly emphasizes the word "testing" (MSJ at 10:2), the mere fact

18 that some of the tasks an employee performs can be described as "'testing' relating to computers

19 does not mean that [an employee] falls within the ambit of a provision that is designed to exempt

20 computer programmers, network designers, and software developers." Hunter v. Sprint Corp.

21 453 F.Supp.2d 44, 52 (D.D.C. 2006). Courts have recognized and rejected the "common

22 perception that all jobs involving computers are necessarily highly complex and require

23 exceptional expertise." Martin v. Indiana Michigan Power Co., 381 F.3d 574, 580 (6th Cir.

24 2004).

25     Indeed, the cases Amdocs cites are easily distinguishable. In Bergquist v. Fid. Info.

26 Services, Inc., 399 F. Supp. 2d 1320, 1330 (M.D. Fla. 2005), the plaintiff was employed as a

   computer programmer and thus fell squarely within the computer professional exemption. In his

27 deposition, the plaintiff admitted, "my attorney did go over the definition as specified in the code

28 and it definitely applied." Id. at 1331. The plaintiff "was further asked if it was his position that

7.

he met the definition of computer programmer under the statutes and codes that he reviewed, to which [the] [p]laintiff answered "[y]es."" *Id.* (emphasis added).

In this case, Plaintiffs have made no such admissions and throughout this case have wholly refuted the notion that they were properly classified as exempt. Mr. Santiago's and Mr. Schussel's jobs were not highly complex, nor did they require exceptional expertise. They were nothing like the plaintiff in *Bergquist* who was actually designing programs, or the plaintiff in *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778, at *17 (S.D.N.Y. Mar. 26, 2010) who was "responsible for capacity management . . . for about fifty to sixty physical servers and 1,500 virtual servers affecting more than 10,000 users," or the plaintiff in *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1323 (S.D. Fla. 2005) who, among other things, wrote specifications for wireless networks and designed and assured proper installation of all cabling infrastructure. Plaintiffs were simply applying well-established, pre-determined techniques and procedures described in Amdocs' manuals in order to determine the correct response to a specific error. Nothing more, nothing less.

Therefore, at a minimum, there is a genuine issue of material fact as to whether Plaintiffs are exempt under the computer employee exemption under §213(a)(1). As explained above, there is no genuine issue regarding the §213(a)(17) hourly employee exemption - it does not and can not apply because Plaintiffs were salaried employees.

> **2.** **There Are Genuine Issues of Material Fact as to Whether Plaintiffs**
> **Were Properly Classified as Exempt Under the Administrative**
> **Exemption.**

There are genuine issues of material fact as to whether Plaintiffs qualify for the Administrative Exemption under 29 U.S.C. §213 (a)(1). The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than
> $455 per week (or $380 per week, if employed in American Samoa
> by employers other than the Federal Government), exclusive of
> board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual
> work directly related to the management or general business
> operations of the employer or the employer's customers; and

8.

1    (3) Whose primary duty includes the exercise of discretion and
     independent judgment with respect to matters of significance.
2    29 C.F.R. § 541.200. Here, Plaintiffs' job duties clearly do not meet the second and third

3    elements of the exemption, and thus Amdocs' argument as to the applicability of the

4    Administrative Exemption fails.

5    First, Plaintiffs' primary duties did not involve the performance of work directly related

6    to the management or general business operations of Amdocs or Amdocs' customers. "To meet

7    this requirement, an employee must perform work directly related to assisting with the running or

8    servicing of the business . . . ." 29 C.F.R. § 541.201. Such work includes:

9              [W]ork in functional areas such as tax; finance; accounting;
               budgeting; auditing; insurance; quality control; purchasing;
10             procurement; advertising; marketing; research; safety and health;
               personnel management; human resources; employee benefits; labor
11             relations; public relations, government relations; computer
               network, internet and database administration; legal and regulatory
12             compliance; and similar activities.

13   *Id.* Plaintiffs' primary job duties were not even close to this type of work.

14   While Amdocs asserts that "Plaintiffs tested Amdocs customers' computer applications

15   and software in order to implement each customer's requested changes and upgrades" (MSJ at

16   12:24-25), Plaintiffs' testimony does not reflect this characterization. Instead, both Plaintiffs

17   testified that it was the developers, not the testers themselves who interfaced with the client.

18   Santiago Depo. at 50:20-25; Schussel Depo. at 136:5-15. Specifically, Mr. Santiago testified that

19   after the client requests its change, it was "[t]he developers, other analysts, business analysts,

20   whoever, will determine if it's feasible or not." *Id.* Similarly, Mr. Schussel testified to working

21   with "the developers to come up with test plans or ideas on how best to make sure that those

22   were implemented in the software correctly." Schussel Depo. at 136:5-15.

23   Indeed, Courts have rejected the argument that simply because an employee troubleshoots

24   and repairs a problem (or in Plaintiffs' case, troubleshoots, and then tests the problem), the

25   employee performs work directly related to the management or general business operations of the

26   employer. For instance, in *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 582 (6th Cir.

27   2004), the Court rejected the argument that the plaintiff qualified for the Administrative

28   Exemption where the plaintiff's primary duty was "to assist in keeping the computers and

9.

1    network running to the specifications and designs of others." In denying summary judgment, the

2    Court reasoned that the plaintiff was "in no way involved in advising the management, planning,

3    negotiating, representing the company, purchasing, promoting sales, and business research and

4    control." *Id.* at 583 (internal quotations omitted).

5           Likewise, in *Turner v. Human Genome Sci., Inc.*, 292 F.Supp.2d 738, 742 (D. Md. 2003),

6    the plaintiffs' primary duties included "troubleshooting hardware and/or software problems as

7    well as connectivity issues." The Court denied summary judgement and rejected the argument

8    that the plaintiffs' duties were related to the administrative operations of the defendant,

9    reasoning, "[m]aintaining a computerized business is, in this day, part of every company's day-to-

10   day operations and nothing in the record establishes that Plaintiffs had substantial involvement in

11   anything more than general computer operating software and hardware." *Id.* at 745. The Court

12   concluded, "Plaintiffs' work was "production" work, not work related to the administrative

13   operations of [defendant]." *Id*; *see also Eicher v. Advanced Business Integrators, Inc.*, 151

14   Cal.App.4th 1363, 1374-75 (2007) (affirming the trial court's finding that a senior software

15   consultant earning more than $60,000 per year did not qualify for the administrative exemption

16   where his duties were to install software, implement computer software systems and to provide

17   customer support and training, reasoning, "[Plaintiff] was an employee who engaged in the core

18   day-to-day business of ABI. **He had no personal effect on the policy or general business**

19   **operations of ABI or its customers . . . .**") (Emphasis added).

20          Similarly, in this case, Plaintiffs' primary duties were to keep Amdocs' software running

21   according to the specifications and designs of others, specifically Amdocs' developers. Like the

22   plaintiffs in *Turner* and *Martin*, Plaintiffs' work was "production" work. Indeed, Mr. Schussel's

23   declaration in support of Plaintiffs' Motion for Conditional Collective Certification plainly states

24   that Mr. Schussel's "primary job duties included providing computer support, trouble shooting,

25   testing related to repairs, problem-solving and application changes, and technical services due to

26   project work." Schussel Decl. at ¶ 4. Mr. Santiago's declaration and deposition testimony

27   similarly reflect performing troubleshooting and testing as his primary job duties. Santiago Decl.

28   at ¶ 4. Specifically, Mr. Santiago testified to running the system "to identify problems with the

10.

code" and "to make sure the changes work." Santiago Depo. at 32:11-19. Therefore, Amdocs has not met its burden of proving, as a matter of law, that Plaintiffs' duties were directly related to the management or general business operations of Amdocs.

Amdocs has similarly failed to meet its burden in proving that Plaintiffs exercised discretion and independent judgment with respect to matters of significance. Importantly, federal regulations provide that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202.

Importantly, federal regulations are clear:

> The section 13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques procedures described in manuals or other sources within closely prescribed limits **to determine the correct response to an inquiry or set of circumstances**.

29 C.F.R. § 541.704 (Emphasis added). As analyzed in greater detail in Section (B)(1) above, this is precisely what Plaintiffs did for Amdocs. Crucially, discretion and independent judgment with respect to matters of significance "generally refers to those decisions normally made by persons who formulate policy within their spheres of responsibility or who participate in this process or who exercise authority to commit the employer in a substantial respect, financial or otherwise." *Turner, supra,* 292 F.Supp.2d at 747 (D. Md. 2003), *citing Cooke v. General Dynamics Corp.,* 993 F.Supp. 56, 65 (D.Conn.1997) (internal quotations omitted). This simply does not describe Plaintiffs' primary job duties.

Indeed, plaintiffs in this case more closely resemble the employee in *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2001), where the Ninth Circuit reversed the granting of summary judgment in favor of the employer who claimed that its field service engineer was subject to the administrative exemption. The plaintiff in *Bothell* worked as a field service engineer for a company which designs, manufactures, and sells robotic test and inspection equipment for the data storage industry. His main duties were to "install, troubleshoot, and maintain" the company's equipment. *Id.* at 1124. Although he was highly skilled and his duties required a high degree of technical proficiency, this did not mean that he exercised independent

11.

1 | judgment and discretion within the definition of the administrative exemption. As the Ninth

2 | Circuit noted:

> The fact that [the plaintiff's] work required a great deal of
> specialized knowledge and skill is not determinative. The
> regulations specifically warn against confusing "the exercise of
> discretion and independent judgment" with "the use of skill in
> applying techniques, procedures, or specific standards." 29 C.F.R.
> §§ 541.207(b)(1) and (c).

6 | *Bothell, supra,* 299 F.2d at 1129.

7 | As discussed above, Mr. Santiago characterized his job as "**pretty much kind of rubber**

8 | **stamping** and just going through knowing the requirements" (Santiago Depo. at 52:24-25

9 | (emphasis added), 49:14-50:1, 51:8-9, 52:10-19, 66:18-23; *see also* Santiago Decl. at ¶ 4) and

10 | Mr. Schussel has repeatedly reiterated his lack of discretion and independent judgment, both in

11 | his deposition testimony and declaration. *See* Schussel Decl. at ¶ 4; Schussel Depo. at 166:24-

12 | 167:7.

13 | Accordingly, Amdocs has not met its burden of proving, as a matter of law, that

14 | Plaintiffs' duties were exempt under the Administrative Employee Exemption pursuant to 29

15 | U.S.C. § 213(a)(1).

16 |

17 | **C.** **Because Defendant Failed to Plead The Affirmative Defense of Settlement**

18 | **and Release, It Has Waived That Defense.**

19 | Federal Rule of Civil Procedure ("F.R.C.P.") Rule 8(a) and (c) provide that a defendant's

20 | failure to raise an "affirmative defense" in its answer effects a waiver of that defense. *See*

21 | *Morrison v. Mahoney,* 399 F.3d 1042, 1046 (9th Cir.2005); 5 Charles Alan Wright, Arthur R.

22 | Miller & Mary Kay Kane, Federal Practice & Procedure § 1278 (2d ed.1990).

23 | Federal Rule of Civil Procedure ("F.R.C.P.") Rule 8(c) states:

24 | **Affirmative Defenses.**
> (1) In General. In responding to a pleading, a party must

25 | affirmatively state any avoidance or affirmative defense, including:
> • accord and satisfaction;...

26 | • payment;...
> • release....

27 | The phrase "must affirmatively state" in Rule 8 is clearly imperative. To escape liability

28 | based on a release of claims, a defendant must affirmatively state that in its responsive pleading.

12.

1    Amdocs did not do so, thus it may not rely on the releases in the severance agreements. *See*

2    *Arizona v. California,* 530 US 392, 410 (2000); *Carroll v. Acme–Cleveland Corp.,* 955 F.2d

3    1107, 1115 (7th Cir. 1992); *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir. 1987).

4         On September 23, 2010, Amdocs served Plaintiffs with an Answer to Plaintiffs' First

5    Amended Complaint. That Answer contained 34 (thirty-four) affirmative defenses, yet Amdocs

6    did not mention any severance agreement or release of claims, nor did it plead the affirmative

7    defense of settlement and release. Abrams Decl. at ¶ 5, Ex. D.

8         On December 20, 2010, Amdocs filed a Motion to Dismiss Plaintiffs' Second Amended

9    Complaint. Nowhere in this Motion did Amdocs mention any severance agreement or release of

10   claims. The Motion was withdrawn to give Plaintiffs opportunity to file a Third Amended

11   Complaint. Abrams Decl. at ¶ 7.

12        On February 22, 2011, Amdocs filed a Motion to Dismiss Plaintiffs' Third Amended

13   Complaint. Once again, nowhere in its Motion to Dismiss did Amdocs mention any severance

14   agreement or release of claims. The Motion was denied in part, and granted in part. Specifically,

15   the Court held Plaintiffs had pled sufficient factual allegations to support their claims for unpaid

16   overtime wages, missed meal and rest periods, and inaccurate wage statements, but dismissed

17   Plaintiffs' claim for conversion and held Plaintiffs' claim for penalties pursuant to California's

18   Private Attorney General Act was time-barred. Abrams Decl. at ¶ 8.

19        On April 14, 2011, Defendant filed its Answer to Plaintiffs' Third Amended Complaint.

20   This Answer contained 33 (thirty-three) affirmative defenses. **Like all of its previous filings,**

21   **Defendant still never mentioned any severance agreement, nor did it plead the affirmative**

22   **defense of settlement and release.** Abrams Decl., at ¶ 6, Ex. E. Amdocs does not even bother

23   to explain this failure.

24        By failing to affirmatively state the defenses of release, accord and satisfaction, or

25   payment, Amdocs has waived them and may not rely on the release of claims in the severance

26   agreements.[2] *Morrison v. Mahoney,* 399 F.3d 1042, 1046 (9th Cir. 2005) ("[a defendant] is

27

28        2. In the context of failing to state an affirmative defense in an answer, some Courts have
          held the term "waiver" may be better described as "forfeiture." *See In re Cellular 101, Inc.,* 539

                                            13.

1  required to raise every defense in its first responsive pleading, and defenses not so raised are

2  deemed waived").

3      This case was removed, so Amdocs may attempt to argue (incorrectly) that state law

4  rather than the F.R.C.P. applies. However, California law is the same as Rule 8. In California, it

5  is long-settled that "the assertion of a release in bar is an affirmative defense" and if not raised,

6  the defense is "deemed waived." *Raischell & Cotrell, Inc. v. Workmen's Comp. App. Bd.* (1967)

7  249 Cal.App.2d 991, 997. Indeed, Amdocs failed to assert the affirmative defense of the

8  releases in both its Answer in state court, and the Answer it filed in this Court.

9      The defense of release is expressly listed in Rule 8(c), and Plaintiffs have clearly been

10  prejudiced by Amdocs' failure to plead these releases as required. This is a putative class action,

11  as well as a collective action, and many employees and former employees have opted-in already,

12  yet Amdocs has waited until now to attempt to escape liability by raising the releases. Those

13  employees, as well as Plaintiffs, have risked much to further this litigation, including reprisals by

14  current employers, harm to future job opportunities, as well as time and money (not to mention

15  the stress of litigation, as well as its costs). Moreover, had Defendant raised this defense earlier,

16  Plaintiffs would have had the opportunity to find and add class representatives who had not

17  signed severance agreements.

18      What is more, it is not just Plaintiffs that are prejudiced by Amdocs' unexplained failure

19  to plead the affirmative defense of the release in either of its Answers or Motions to Dismiss.

20  This Court has also been adversely affected. The Supreme Court has held that all counsel have a

21  duty "to bring to the federal tribunal's attention, without delay, facts that may raise a question of

22

23  F.3d 1150, fn. 2 ("Although, consistent with our prior decisions, we use the term waiver here to
    describe the loss of an affirmative defense through the failure to raise it in a timely manner, a

24  more accurate term may be forfeiture."); *see also United States v. Olano,* 507 U.S. 725, 731
    (1993) (holding that "a constitutional right, or a right of any other sort, may be forfeited in

25  criminal as well as civil cases by the failure to make timely assertion of the right.... Whereas
    forfeiture is the failure to make the timely assertion of a right, waiver is the intentional

26  relinquishment or abandonment of a known right"); *Harris v. Sec'y, U.S. Dep't of Veterans*

27  *Affairs,* 126 F.3d 339, fn. 2 (D.C.Cir.1997) (discussing the potential inaccuracy of the term
    waiver and holding that "[t]he failure to plead need not be intentional for the party to lose its

28  right to raise the defense"). Whatever the proper term, by failing to affirmatively plead the
    release as required under the F.R.C.P., Amdocs has lost that defense to Plaintiffs' claims.

14.

1  mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 23 (1997) (internal

2  quotations, citations and emphasis omitted). Amdocs now argues that this case is moot, yet

3  inexplicably waited until now to raise the releases - and only after Amdocs' multiple attempts to

4  dismiss this action on other grounds failed. Amdocs' counsel "had an obligation to inform the

5  court" of the releases and Amdocs' "belief that the claim had been released" before making those

6  other attempts. *In re Cellular 101, Inc., supra*, 539 F.3d at 1154. Amdocs' counsel wholly failed

7  to do so.

8          "The obligation to inform the court... is of such critical importance to the maintenance of

9  orderly proceedings and to the prevention of needless delay that a lawyer who fails to fulfill that

10 obligation may be personally subject to sanctions." *Id., citing Gould v. Bowyer*, 11 F.3d 82, 84

11 (7th Cir. 1993). The Ninth Circuit's 2008 decision in *In re Cellular 101, Inc.* is instructive.

12 There the court encountered the same circumstances as here, where the defendant kept a release

13 hidden for "a second bite at the apple" in case its other attempts to win the case failed:

14              [Defendant's] current appeal rests upon the premise that the AT&T
               agreement released the administrative claim. But if that is true now, it was
15              true when [defendant] appeared before this court the first time.

16              Even if we assume that [defendant] knew that [plaintiffs] would contest
               the assertion that the AT&T agreement released their claim, [defendant]
17              still should have brought the agreement to the court's attention....
               [defendant] chose, instead, to.... try to win... with the arguments it had
18              already briefed, presumably hoping that if it lost, it could try for a second
               bite at the apple by raising the release defense afterwards.
19
               Regardless of [defendant's] motives, we cannot permit the court to be
20              subject to such manipulation. We conclude that by failing to raise the
               release issue...[defendant] waived its right to assert the defense in
21              subsequent proceedings.

22              Settlement and release is an affirmative defense and is generally waived if
               not asserted in the answer to a complaint. See FED. R. CIV. P. 8(c)("In
23              responding to a pleading, a party must affirmatively state any avoidance or
               affirmative defense, including: ... release"); *Metcalf v. Golden (In re*
24              *Adbox, Inc.)*, 488 F.3d 836, 841 (9th Cir.2007). Even though [defendant]
               could not have asserted the defense at the pleading stage because its
25              settlement with AT&T did not occur until [defendant]'s first appeal was
               already pending, [defendant] had an opportunity and an obligation to raise
26              the issue at that time because the purported release, in its view, mooted the
               appeal.
27
   *In re Cellular 101, Inc., supra*, 539 F.3d 1154-55.
28
   ///

                                         15.

1    Amdocs should have and could have pleaded the affirmative defense of release in its
2 Answer in state court, or in its Answer in this Court. It never did, and instead it filed an Answer
3 without mentioning that affirmative defense, and then attempted to dismiss this action on other
4 grounds. It then filed another Answer, but again failed to mention the releases. Just like the
5 defendant in *In re Cellular 101, Inc.*, Amdocs waited until it lost its Motion to Dismiss before it
6 raised the affirmative defense of release for the first time. Even more egregious, unlike the *In re*
7 *Cellular 101, Inc.* defendant, which could not have asserted the defense of release at the pleading
8 stage (since in that case, the release was not signed until after litigation had commenced), in this
9 case, Amdocs could have and should have raised the issue of the release. Amdocs had the
10 "opportunity and... obligation to raise the issue" on multiple occasions since (including two (2)
11 separate answers, and two (2) separate motions to dismiss). *Id.* It never did so until now. It is
12 axiomatic that Plaintiffs, the putative collective class, and the Court have been prejudiced by this
13 failure. Amdocs has therefore waived this affirmative defense.

14    Accordingly, any releases are not at issue in this lawsuit, and Amdocs may not rely upon
15 any such releases to escape liability for its repeated violations of the California Labor Code and
16 the Fair Labor Standards Act.

17

18    **D.    Plaintiffs' Severance Agreements Are Not Valid or Enforceable.**

19    Even if Defendant had not waived the defense of release by failing to assert it as required
20 by Rule 8 of the F.R.C.P., the severance agreements are not valid or enforceable.

21

22    **1.    The Severance Agreements Violate the National Labor Relations Act.**

23    The severance agreement states that Plaintiffs may not participate in "any action brought
24 by any third-person party or equity against Amdocs." MSJ at 6:27-7:2. Amdocs argues this
25 prohibits any class or collective actions. MSJ at 16:3-19. However, a ban on collective action
26 with other employees violates the National Labor Relations Act of 1937 ("NLRA"). Section 7 of
27 the NLRA, which specifies a number of rights held by employees, provides:

28            Employees shall have the right to self-organization, to form, join,
             or assist labor organizations, to bargain collectively through

                                              16.

1              representatives of their own choosing, and to engage in **other**
             **concerted activities** for the purpose of collective bargaining or

2              **other mutual aid or protection**, and shall also have the right to
             refrain from any or all of such activities except to the extent that

3              such right may be affected by an agreement requiring membership
             in a labor organization as a condition of employment as authorized

4              in section 158(a)(3) of this title.

5   29 U.S.C.A. § 157, emphasis added. Under Section 7, it is an unfair labor practice "to interfere

6   with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157. . . ." 29

7   U.S.C.A. § 158(a)(1).

8       Thus, a severance agreement that, by its express or implied terms, precludes class actions

9   by employees to enforce wage and hour laws is unlawful pursuant to Section 7 of the NLRA.

10   Such a ban would unlawfully prevent employees from engaging in concerted activity to improve

11   their wages and/or working conditions. Because the object of such a severance agreement or

12   clause is unlawful, it is void and unenforceable by any court.

13         **2.**      **A Contract That Interferes with Concerted Activity in Violation of the**

14              **NLRA Is Void.**

15       The rule that contractual provisions are void when they are illegal is so fundamental that a

16   court may invalidate a contract on the grounds of illegality even when the court would otherwise

17   lack jurisdiction over the activity giving rise to the dispute. *California v. United States*, 271 F.3d

18   1377, 1383 (Fed. Cir. 2001) ("Without a doubt, contractual provisions made in contravention of

19   a statute are void and unenforceable").

20              **It is also well established, however, that a federal court has a**
             **duty to determine whether a contract violates federal law**

21              **before enforcing it.** The power of the federal courts to enforce the
             terms of private agreements is at all times exercised subject to the

22              restrictions and limitations of the public policy of the United States
             as manifested in ... federal statutes.... Where the enforcement of

23              private agreements would be violative of that policy, it is the
             obligation of courts to refrain from such exertions of judicial

24              power.

25   *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84, 102 S. Ct. 851, 859-60 (1982), citing *Hurd v.*

26   *Hodge*, 334 U.S. 24, 34-35, 68 S.Ct. 847, 853, 92 L.Ed. 1187 (1948) (Emphasis added).

27       In other words, because the courts cannot be used as tools to enforce illegal contracts,

28   they must be able to refuse to enforce private agreements that have an unlawful object. Here, the

17.

1 release signed by Plaintiffs is permeated with illegality given that, according to Defendant, it

2 bans class actions and FLSA collective actions. Moreover, unlike permitted waivers of class and

3 collective actions under the Federal Arbitration Act, here there is no federal statute that would

4 possibly permit such an obviously unlawful release. There is no arbitration agreement exception

5 here. Accordingly, the releases are void and unenforceable.

6 Because Amdocs has misled former employees (and attempts to mislead this Court) to

7 believe they have waived their FLSA rights, the entire Release must be declared void in order to

8 allow the proper enforcement of state and federal overtime laws. If only an FLSA collective

9 action, with a shorter statute of limitations, is allowed, Amdocs will still enjoy a profit for every

10 day it unlawfully misled former employees, even if those employees later learn the truth and opt-

11 in. In addition, the Release makes it much less likely they will opt-in. Thus, Amdocs will escape

12 liability for unlawful practices because of an unlawful Release. Indeed, the Ninth circuit has

13 held:

14          Denial of a class action in cases where it is appropriate may have the effect
            of allowing an unscrupulous wrongdoer to retain the benefits of its
15          wrongful conduct... and instructed that automatically eliminat[ing] the
            right to a class-wide proceeding would have the 'substantial' effect of
16          contravening the principles behind class action policies and 'chilling the
            effective protection of interests common to a group.
17 *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 (9th Cir. 2003), *citing Keating v. Sup. Ct.*,

18 31 Cal.3d 584, 609 (1982).

19 Accordingly, the entire Release should be declared void in order to prevent the

20 unscrupulous wrongdoer from retaining the benefits of violating state and federal wage laws.

21          **3.      There Was Never Any Waiver of Wage Claims Here.**

22 Because contract law is a state matter, California law governs here and courts should

23 apply ordinary state-law principles that govern the formation of contracts. *Mastrobuono v.*

24 *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-63 and n. 9 (1995); *Perry v. Thomas*, 482 U.S.

25 483, 492-493, n. 9 (1987). In this case, under California law, the releases are unenforceable.

26 The following elements of a valid wage compromise are required "under California law:

27 (1) A bona fide dispute over wages, (2) the employer's unconditional payment, (3) prior to the

28 execution of any release, (4) of wages concededly due." *Kurian v. U.S. Mtg. Capital, Inc.*, 2008

18.

1 | WL 2405998, 9 (Cal.App. 2 Dist. 2008). In *Kurian* the defendant employer moved for summary

2 | judgment based on a release "of all claims of any nature, known or unknown, ... includ[ing] ...

3 | wage and hour claims [and] overtime claims." *Id.* The plaintiff employee contended the release

4 | was void because the employee was not aware of owed wages when the release was entered into,

5 | so there was no "bona fide dispute" over wages, and thus no settlement.

6 |     The California Appellate court agreed the release was void, citing the United States

7 | Supreme Court's decision in *Hohnke v. U.S.*, 69 Fed.Cl. 170, 175 -176 (2005) [holding

8 | compromise of FLSA claims unenforceable]:

9 |         For a bona fide dispute to exist, there must be some claim on behalf of the employee that she is entitled to overtime payment. And to settle such a

10 | bona fide dispute, there must be some resolution of the number of hours worked or amount of money due. A bona fide dispute is not compromised

11 | when an employer simply pays an employee a lump sum of money in exchange for a promise not to bring a suit for overtime wages.

12 | *Kurian, supra,* 2008 WL at *9. The *Kurian* court followed the reasoning of the Supreme Court

13 | in *Hohnke*, stating:

14 |         In *Hohnke*, as in this case, the settlement agreement purported to compromise any claim for overtime pay, but there was no evidence that

15 | the parties had negotiated or even discussed a potential overtime claim. (See Hohnke, at pp. 172-173.)

16 | *Kurian, supra,* 2008 WL at *9.

17 |     Here there was no meeting of the minds concerning wage claims. The severance

18 | agreements do not even mention the California Labor Code or the FLSA. The severance

19 | agreements followed Plaintiffs' terminations, and were intended to avoid a potential wrongful

20 | termination action, but nothing suggests Plaintiffs and Amdocs ever discussed any potential

21 | overtime claims. Thus there was no compromise of any wage claims under the Labor Code or

22 | the FLSA.

23 |     **E.**     **Plaintiffs' Severance Agreements Do Not Prohibit Class or Collective**

24 |         **Actions.**

25 |     Significantly, there is no class or collective action waiver contained in the severance

26 | agreements. Instead, without more, Amdocs argues that the general release language implicitly

27 | waived all such rights. MSJ at 16:14-17. . However, "In cases of uncertainty . . . the language

28 | of a contract should be interpreted most strongly against the party who caused the uncertainty to

1   exist." Cal. Civ. Code § 1654; *accord Weil v. California Bank*, 219 Cal. 538, 541 (1933). Thus,

2   there is no implicit waiver of rights here, especially unwaivable rights such as those provided by

3   the Fair Labor Standards Act ("FLSA").

4         By its terms, the rights to the legal minimum wage and legal overtime compensation

5   conferred by the statute are **unwaivable**. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450

6   US 728, 740 (1981) [right to a minimum wage and overtime pay unwaivable under FLSA].

7   Because an employee's FLSA claims are nonwaivable, they "are not subject to negotiation or

8   bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States, etc.*,

9   679 F.2d 1350, 1352 (1982) *citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 709-711

10  (1945); *see also Schulte Co. v. Gangi*, 328 U.S. 108, 114-115 (1945).

11        FLSA rights are imbued with a public purpose and "cannot be abridged by contract or

12  otherwise waived." *Barrentine, supra,* 450 US at 740. Any waiver of rights under the FLSA

13  "would 'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to

14  effectuate." *Id.* As the Supreme Court stated, "The principal congressional purpose in enacting

15  the [FLSA] was **to protect all covered workers**." *Id.* at 739 (Emphasis added).

16        There is only one <u>Congressionally-created</u> exception: the arbitration exception under the

17  Federal Arbitration Act ("FAA"). *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

18  There are simply *no other exceptions*. As the Supreme Court explained:

19        ...cases [holding statutory rights are unwaivable] were not decided under the FAA
          [which] reflects a "liberal federal policy favoring arbitration agreements."
20        Therefore, those cases provide no basis for refusing to enforce [arbitration].

21  *Gilmer, supra*, 500 U.S at 35. Thus FAA cases are the sole exception, not the rule.

22        Amdocs now takes the sole FAA exception and concludes that Plaintiffs have waived

23  their FLSA collective action rights - although this is not an FAA exception case, and there is not

24  any express language waiving class or collective actions, nor even a mention of the FLSA in

25  Plaintiffs' severance agreements. Instead, Amdocs seeks to overturn seven decades of precedent

26  holding there can be no waiver of FLSA rights based solely on an *implied waiver*. However, case

27  law is clear: Plaintiffs have not impliedly (and certainly not explicitly) waived their right to bring

28  a class or FLSA collective action.

1   The *Kurian* court faced the same claims by an employer. The employer there contended

2   that a settlement agreement effected a valid compromise and release of the employee's FLSA

3   claims. The court found no waiver, holding:

4       We have reviewed the agreement, and find no mention of the FLSA. Further,
        "FLSA rights cannot be abridged by contract or otherwise waived because this

5       would 'nullify the purposes' of the statute and thwart the legislative policies it was
        designed to effectuate." (*Barrentine v. Arkansas-Best Freight System, supra*, 450

6       U.S. at 740.) Thus, all settlements must be approved in an administrative or court
        proceeding. (*Lynn's Food Stores, Inc. v. United States, etc., supra*, 679 F.2d at

7       1352-1353; *Hohnke v. U.S., supra*, 69 Fed.Cl. at 178 [even compromise after bona
        fide dispute requires supervision by a court or the Secretary of Labor].)

8   *Kurian, supra*, 2008 WL at 10.

9   Like *Hohnke* and *Kurian*, there is no mention of the FLSA in the releases Amdocs

10  belatedly relies upon here. In fact, in *Kurian* even though the release specifically mentioned

11  "wage and hour claims [and] overtime claims" the Appellate court nevertheless found no meeting

12  of the minds concerning wage claims. *Id.* at 9. Here there is nothing like the language in *Kurian*,

13  instead Amdocs claims an *implied* release. Thus, as in *Kurian*, Plaintiffs have not waived any

14  wage claims under the FLSA.

15  **IV.    CONCLUSION**

16      For the foregoing reasons, Defendant's Motion for Summary Judgment must be denied.

17

18  DATED: September 27, 2011          SCHONBRUN DESIMONE SEPLOW
                                       HARRIS HOFFMAN & HARRISON LLP
19
                                       LAW OFFICES OF THOMAS W. FALVEY
20

21

22                                     Courtney Abrams
                                       Attorneys for Plaintiffs
23

24

25

26

27

28

21.