THOMPSON COBURN LLP
Amie E. Needham (Admitted pro hac vice)
Laura M. Jordan (Admitted pro hac vice)
Lauren M. Bruning (Admitted pro hac vice)
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: 314.552.6000
Facsimile: 314.552.7417
aneedham@thompsoncoburn.com
ljordan@thompsoncoburn.com
lbruning@thompsoncoburn.com

EPSTEIN BECKER & GREEN, P.C.
Michael S. Kun (State Bar No. 208684)
1925 Century Park East, Suite 500
Los Angeles, California 90067
Telephone: 310.556.8861
Facsimile: 310.553.2165
mkun@ebglaw.com

Attorneys for Defendant
AMDOCS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK SANTIAGO; and ROBERT SCHUSSEL,<br><br>Plaintiffs,<br><br>v.<br><br>AMDOCS, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. C 10-04317 SI<br><br>JUDGE:  SUSAN Y. ILLSTON<br><br>**DEFENDANT AMDOCS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:  October 28, 2011<br>TIME:  9:00 a.m.<br>CTRM.:  10 |

# TABLE OF CONTENTS

Page(s)

I. Plaintiffs Are Exempt Under the FLSA ................................................................. 2

    A. Plaintiffs Are Exempt Computer Employees. ............................................ 2

        1. 29 U.S.C. § 213(a)(1) and 29 U.S.C. § 213(a)(17) Apply to Plaintiffs. ................................................................ 2

        2. Plaintiffs' Primary Duties Satisfy the Exemption Standards of the Computer Employee Exemption. ...................... 4

        3. Plaintiffs Were Not Performing Help-Desk Functions. ................................................................................... 6

    B. Plaintiffs are Administratively Exempt. .................................................... 8

II. Plaintiffs' Releases Bar Their State Law, Collective, and Class Action Claims ................................................................................................. 9

    A. Amdocs Pled the Affirmative Defense of Waiver in its Answer. ....................................................................................................... 9

    B. The Releases Prohibit Plaintiffs' Request for Class and Collective Relief. ..................................................................................... 10

    C. Plaintiffs Waived Their Wage Claims Under California State Law. ............................................................................................... 11

    D. The NLRA Does Not Bar Plaintiffs' Releases. ........................................ 12

III. Conclusion ........................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

AT&T Mobility v. Concepcion
   131 S.Ct. 1740 (2011).................................................................................................12

Bergquist v. Fid. Info. Servs.
   399 F. Supp. 2d 1320 (M.D. Fla. 2005)..................................................................3, 9

Bobadilla v. MDRC
   2005 WL 2044938 (S.D.N.Y. May 18, 2006) ....................................................3, 6, 7

Clark v. JPMorgan Chase Bank, N.A.
   Case No. 08 CV 2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ......................3

Gofron v. Picsel Techs., Inc.
   No. C 09-04041 CV, 2011 WL 3053191 (N.D. Cal. Jul. 25, 2011).........................3

Hunter v. Sprint Corp.
   453 F. Supp. 2d 44 (D.D.C. 2006).............................................................................6

Jimenez v. JP Morgan Chase & Co.
   2008 WL 2036896 (S.D. Cal. May 8, 2008) ..........................................................10

Kelly v. City & County of San Francisco
   No. C 05-1287 SI, 2008 U.S. Dist. LEXIS 108871 (N.D. Cal. Jun. 30, 2008) ............................................................................................. 1, 9, 10, 11

Kurian v. U.S. Mortgage Capital, Inc.
   2008 WL 2405998 ...................................................................................................12

Lu v. AT&T
   2011 WL 2470268 (N.D. Cal. Jun. 21, 2011).........................................................10

Martin v. Indiana Michigan Power Co.
   381 F.3d 574 (6th Cir. 2004) .....................................................................................6

Pellerin v. Xspedius Management Co. of Shreveport L.L.C.
   432 F.Supp.2d 657 (W.D. La. 2006) ................................................................2, 3, 9

Reynov v. ADP Claims Svcs. Group, Inc.
   2007 WL 5307977 (N.D. Cal. Apr. 30, 2007).........................................................11

San Diego Bldg. Trades Council v. Garmon
   359 U.S. 236 (1959) ................................................................................................13

Turner v. Human Genome Sci., Inc.
   292 F. Supp. 2d 738 (D. Md. 2003) ..........................................................................8

Young v. Cerner Corp.
   2007 WL 2463205 (W.D. Mo. Aug. 28, 2007).........................................................6

**CALIFORNIA CASES**

Eicher v. Advanced Business Integrators, Inc.
  151 Cal.App.4th 1363 (2007) .............................................................................. 8, 9

**FEDERAL STATUTES**

29 U.S.C. § 157 ................................................................................................... 12

29 U.S.C. § 160(b) .............................................................................................. 13

29 U.S.C. § 213(a)(1) ......................................................................................... 2, 3

29 U.S.C. § 213(a)(17) ....................................................................................... 2, 3

29 C.F.R. § 541.200 ........................................................................................... 2, 8

29 C.F.R. § 541.200(2) .......................................................................................... 8

29 C.F.R. § 541.202 ............................................................................................... 8

29 C.F.R. § 541.400 ........................................................................................ passim

29 C.F.R. § 541.400(a) ........................................................................................... 2

29 C.F.R. § 541.400(b)(2) ................................................................................... 4, 5

29 C.F.R. § 541.402 ............................................................................................... 8

Fed.R.Civ.P. 8(c) .................................................................................................... 9

**CALIFORNIA STATUTES**

California Civil Code § 1542 ............................................................................... 11

Plaintiffs' opposition fails to identify any genuine issue of material fact. Plaintiffs, who expressly admit that they performed exempt-level work, argue that the well-established law governing their claims does not apply. The issues raised in Plaintiffs' Opposition are nothing more than unsuccessful attempts to unnecessarily confuse the issues and create disputes where none exist.

There are two straightforward issues before the Court: **(1)** whether Plaintiffs performed work that fell within the parameters of the computer employee or administrative exemption; and **(2)** whether Plaintiffs' releases preclude their state law claims and their request for class relief. These two issues are simply resolved. There is no dispute that Plaintiffs' primary duties related to the testing of computer systems or programs, based on and related to user or system design specifications. (Santiago Dep., 34:8-22); 29 C.F.R. § 541.400 (2011). Their primary duties unambiguously render Plaintiffs exempt under 29 C.F.R. § 541.400.

Likewise, Plaintiffs do not deny they executed releases that waived their individual state law claims and federal class and collective action relief. This Court need only refer to its prior decision in <u>Kelly v. City & County of San Francisco</u>, No. C 05-1287 SI, 2008 U.S. Dist. LEXIS 108871 (N.D. Cal. Jun. 30, 2008), in which it found that a substantially similar release effectively precluded the plaintiffs' state claims and federal procedural rights. Under <u>Kelly</u>, Plaintiffs' state claims and federal claims for class and collective action must equally be dismissed.

Plaintiffs are exempt, and their federal overtime claims are barred. Further, Plaintiffs' releases preclude their right to recover under state law, as well as their right to collective and class relief under the FLSA. Summary judgment is, therefore, proper.

///

///

///

- 1 -

## I. Plaintiffs Are Exempt Under The FLSA

In an attempt to circumvent their blatant admissions as to FLSA exempt status, Plaintiffs inaccurately portray their job duties with Amdocs as rote, unskilled labor. Plaintiffs inaccurately apply a standard for exemption that was long ago rejected when the Department of Labor amended the FLSA. Under the plain language of the applicable regulations, Plaintiffs clearly meet the requirements of the computer employee exemption under 29 C.F.R. § 541.400 and the administrative employee exemption under 29 C.F.R. § 541.200.

### A. Plaintiffs Are Exempt Computer Employees.

#### 1. 29 U.S.C. § 213(a)(1) and 29 U.S.C. § 213(a)(17) Apply to Plaintiffs.

Plaintiffs argue § 213(a)(17) does not apply to this matter because Plaintiffs were not compensated on an hourly basis. Plaintiffs' analysis, however, is plagued with a fundamental miscomprehension of the applicable regulations.

First, Plaintiffs' position is belied by the plain language of the statute, which reads, in relevant part:

> **Any employee** who is a computer systems analyst, computer programmer, software engineer or other similarly skills worker, whose primary duty is-
> ...
> (B) the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to use or system design specifications;
> ...
> (D) a combination of the duties described in subparagraphs (A), (B), and (C), the performance of which requires the same level of skills, and
> who, **in the case of** an employee who is compensated on an hourly basis, is compensated at a rate not less than $27.63 an hour.

29 U.S.C. § 213(a)(17) (emphasis added); see also, 29 C.F.R. § 541.400(a). Section § 213(a)(17) specifically exempts "**any employee**" who meets the primary duties test set forth in subparagraphs (A) through (D). Id. (emphasis added). The minimum hourly compensation requirements apply only "in the case of an employee who is compensated on an hourly basis." Id.; see also Pellerin v.

Xspedius Management Co. of Shreveport L.L.C., 432 F.Supp.2d 657, 665 n.9 (W.D. La. 2006) ("One could argue that the last clause of § 213(a)(17) limits the exemption to those who earn at least $27.63 per hour. However, we read that last clause as imposing an additional requirement only for those employed on an hourly basis.") (internal citations omitted).[1]

Plaintiffs' improperly argue that standards for analyzing salaried employees under the computer employee exemption should be higher than the standards for analyzing whether hourly employees are exempt. The idea that the analysis should differ has been consistently rejected:

> Section 213(a)(17) broadened the coverage of computer services personnel from that included in the prior Section 213(a)(1) computer professional exemption and the 1991 DOL regulations in three significant ways. First, it dispensed with Section 213(a)(1)'s requirement that the computer professional exemption apply 'only to highly-skilled employees who have achieved a level of proficiency in the theoretical and practical application of a body of highly specialized knowledge.' Second, it eliminated any reference to educational requirements. Third, it eliminated the requirement that the employee's work require the exercise of independent judgment and discretion.

Bobadilla v. MDRC, 2005 WL 2044938, at *6 (S.D.N.Y. May 18, 2006) (internal citations omitted). Every regulatory standard that governs the computer exemption is found in 29 C.F.R. § 541.400. See Bergquist v. Fid. Info. Servs., 399 F. Supp. 2d. 1320, 1329 (M.D. Fla. 2005) ("In the DOL's regulations effective August 23, 2004, the DOL clarified the regulatory provisions applicable to computer employees by **placing them all in 29 C.F.R. § 541.400 (2004).**") (emphasis added).

Irrespective of whether this Court applies § 213(a)(1) or § 213(a)(17), the analysis is the same. The sole difference between these statutory provisions is the method by which the employee is compensated. The Department of Labor's Field

---

[1] Courts have routinely applied 29 U.S.C. § 213(a)(17) to hourly workers. Pellerin, 432 F. Supp. 2d at 664; Clark v. JPMorgan Chase Bank, N.A., Case No. 08 CV 2400, 2010 WL 1379778, *3, 4,17 (S.D.N.Y. Mar. 26, 2010); Gofron v. Picsel Techs., Inc., No. C 09-04041 CV, 2011 WL 3053191 *10 (N.D. Cal. Jul. 25, 2011).

- 3 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - Case No. C 10-04317 SI

Operations Handbook clearly provides that, when evaluating whether computer employees are exempt under 213(a)(1) or 213(a)(17), "the same duties test now applies." DOL Field Operations Handbook, 22e00, Rev. 661 (11/29/10). This Court, therefore, should evaluate whether Plaintiffs are exempt under the standards of 29 C.F.R. §§ 541.400-402.

Applying the standards of 29 C.F.R. §§541.400-402, there is no dispute that Plaintiffs are exempt. Plaintiffs' testimony demonstrates that: (a) they were paid in excess of the minimum salary of $455 per workweek;[2] (b) their primary duties involved the testing of computer systems or programs related to user or system design functions; and (c) they were not performing computer repair work or help-desk functions.

### 2. Plaintiffs' Primary Duties Satisfy the Exemption Standards of the Computer Employee Exemption.

Plaintiffs' testimony plainly demonstrated that their work involved "testing … of computer systems or programs related to user or system design functions." 29 C.F.R. § 541.400(b)(2). As testers, Plaintiffs were both involved in the lifecycle of computer application development. They participated as part of a team of coders, analysts and testers whose function was to support upgrades to computer applications. (Schussel Dep. 87:15-23). There were not any low-level workers on the team. (Schussel Dep. 86:23-87:14). Plaintiffs' roles were to try to find the bugs in the computer systems by writing and running test scripts that would be applied to the software. (Schussel Dep. 82:16-20, 83:7-17). Plaintiffs testified as follows:

> Q: Okay. When you performed testing services for WEBTAXI, you write test cases; is that correct?
> A. Yes.
> Q. Okay. Did you write the test cases?
> A. According to specifications, yes.
> Q. Okay. And are these test cases similar to a **prototype**?

---

[2] There is no dispute that both Santiago and Schussel were paid on a salary basis in excess of $455 per workweek. (Santiago Dep. 40:17-19; Schussel Dep. 72:24-25; 73:1-3).

> A. I don't understand the question.
> Q. A test case is kind of like a dummy operation of the application that's intended to be rolled out; is that right?
> A. Yes.
> Q. Okay. And you create those test cases **based on the system design specifications**?
> A. **Yes.**

(Santiago Dep. 34:8-22) (emphasis added).

> Q. Sir, would you agree with me that your job involves the **testing of computer systems or programs**? Strike that. Let me ask that again. Would you agree with me, sir, that your job at Amdocs involved the testing of computer systems or programs?
> MS. JONAS: Vague and ambiguous. Calls for a legal conclusion.
> THE WITNESS: **Yes. It does.**
>
> Q. BY MR. KUN: Would you agree with Mr. Santiago's job involved the testing of computer systems or programs?
> MS. JONAS: Same objection.
> THE WITNESS: I -- yes. We were on the same team. Yes.

(Schussel Dep. 164:21-165:10) (emphasis added). This testimony directly aligns with the exemption standard set forth in 29 C.F.R. § 541.400(b)(2) ("The design, development, documentation, analysis, creation, **testing** or modification of computer systems or programs, **including prototypes, based on and related to user or system design specifications**.") (emphasis added).

In performing these testing duties, Plaintiffs acknowledged their expertise in testing computer operating systems:

> Q. Okay. And what do you consider yourself -- what area do you consider yourself to be an expert?
> MS. JONAS: Same objection.
> THE WITNESS: Large and medium frame systems.
> Q. And what are large and medium frame systems?
> A. Well, large systems like your big IBM processors. Medium systems are considered server process for networking, etcetera.
> Q. Okay. When you were employed by AT&T and Amdocs, you worked on WEBTAXI and EXCLAIM, correct?
> A. Yes.
> Q. Are those large or medium processor systems?
> A. Those are large systems.

(Santiago Dep. 26:19-25; 27:1-8).

> Q. Did the work that you performed for Amdocs differ in any way from the work that you performed at AT&T on the WEBTAXI project?
> A. No.

- 5 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - Case No. C 10-04317 SI

(Santiago Dep. 40:13-16).

> Q. Could someone with a basic understanding of large frame computer applications or systems work on WEBTAXI off the street?
> MS. JONAS: Objection. Vague and ambiguous.
> THE WITNESS: No.
> MS. JONAS: Calls for speculation.

(Santiago Dep. 29:15-20). In fact, in order to service an application such as WEBTAXI, one had to have an understanding of the purpose of the application and "the different systems involved with processing data for that application and other procedures as far as our position test procedures, different teams we work with, etcetera." (Santiago Dep. 29:21-30:8).

Plaintiffs' testimony demonstrates that their duties are directly in line with the exempt duties described in 29 C.F.R. § 541.400. Based on these facts, summary judgment is proper. See, e.g. Young v. Cerner Corp., 2007 WL 2463205 (W.D. Mo. Aug. 28, 2007) (holding that plaintiff was exempt as a computer employee where plaintiff tested solutions aimed at fixing software bugs).

### 3. Plaintiffs Were Not Performing Help-Desk Functions.

Plaintiffs improperly rely on Hunter v. Sprint Corp., 453 F. Supp. 2d 44 (D.D.C. 2006) and Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir. 2004) for the proposition that Plaintiffs were not exempt. In Hunter, the plaintiff "functioned as a technically proficient help-desk employee whose primary duty was customer service." Hunter, 453 F.Supp.2d at 52. In Martin, the plaintiff's tasks involved "installing and upgrading hardware and software on workstations, configuring desktops, checking cables, replacing parts, and troubleshooting. Martin, 381 F.3d at 580.[3]

Plaintiffs did not perform any type of help-desk services like those performed by either Martin or Hunter. (Santiago Dep. 132:12-133:12).

---

[3] Martin is also inapplicable because the court applied the pre-2004 FLSA regulations. The 2004 amendments substantially broadened the application of the overtime exemptions for computer employees, and reduced the requirements for exempt status. Martin, 381 F.3d at 579; Bobadilla, 2005 WL 2044938.

> Q. And you did not do any mechanical work on computer hardware?
> A. No.
> Q. Okay. And you did not perform help desk-type functions, correct?
> A. Correct.

(Santiago Dep. 133:7-12).

Despite their clear testimony demonstrating that they are exempt as computer employees pursuant to 29 C.F.R. § 541.400, Plaintiffs contend that they lacked the level of independent judgment and discretion required for a computer employee. First, for the reasons explained above, independent judgment and discretion are not required under the computer employee exemption. See 29 Fed. Reg. at 22158 (noting that 29 C.F.R. § 541.400 removed the requirement that a computer worker exercise discretion and judgment); Bobadilla, 2005 WL 2044938 at *6, n. 5 (noting that the amendments to the FLSA eliminated the requirement of proficiency and the exercise of independent judgment and discretion to computer workers).

In any event, even under Plaintiffs' inflated and misconstrued standard, they are exempt. To successfully perform the duties of Plaintiffs' positions, Plaintiffs were required to review the clients' requirements for a software upgrade and "be able to test to those requirements and come up with different plans and test cases that would have covered all scenarios to make sure that, you know, they are covered sufficiently." (Schussel Dep. 167:13-23). Their positions, therefore, required the type of independent judgment and discretion and theoretical knowledge of computer systems and analysis which would render Plaintiffs exempt under any level of analysis considered by this Court.[4]

---

[4] Plaintiffs mistakenly assert that because certain standards and parameters exist in their line of work, they cannot exercise independent judgment and discretion. The manuals or procedures Plaintiffs used did not instruct Plaintiffs how to perform their job. On the contrary, they merely articulated minimum quality standards that had to be achieved before testing could conclude on a software upgrade. (Santiago Dep. 49:20-50:25). This manual was a document Plaintiffs used "only as a referral." (Santiago Dep. 51:23-52:1). In fact, Plaintiff used the manual "[m]aybe in the beginning maybe a few minutes to review a certain procedure." (Santiago Dep. 52:2-5).

### B. Plaintiffs are Administratively Exempt.

The administrative exemption applies to salaried employees whose primary duties consist of:

> (2) the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. To determine whether an employee exercises discretion and independent judgment, courts examine whether "the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202. The federal regulations demonstrate the applicability of the administrative exemption in this case:

> For example, systems analysis and computer programmers **generally meet** the duties requirements for the administrative exemption if their primary duty includes work such as planning, scheduling, and coordinating activities required to develop systems to solve complex business, scientific or engineering problems of the employer **or the employer's customers**.

29 C.F.R. § 541.402 (emphasis added).

Here, there is no dispute that Plaintiffs performed their work with independent judgment and discretion. Plaintiffs admitted so much in their deposition. Schussel testified, for example:

> Q. There's a sentence there that reads "I can work independently without close and constant supervision." Do you believe that's accurate?
> A. Yes, I think so.

(Schussel Dep. 176:1-4, Ex. 18). Plaintiffs' work, testing customers' computer applications to ensure that the upgrades conformed with customer needs, plainly falls within the parameters set forth in 29 C.F.R. § 541.200(2) and 29 C.F.R. § 541.402. Under these circumstances, Plaintiffs are exempt.[5]

---

[5] <u>Turner v. Human Genome Sci., Inc.</u>, 292 F. Supp. 2d 738 (D. Md. 2003) and <u>Eicher v. Advanced Business Integrators, Inc.</u>, 151 Cal.App.4th 1363 (2007), cited by Plaintiffs, are inapposite. In <u>Turner</u>, the plaintiffs merely performed upkeep and maintenance functions on the company's computer systems, and lacked discretion and independent judgment. <u>Turner</u>, at 745-47. Meanwhile, in <u>Eicher</u>, the plaintiff

- 8 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - Case No. C 10-04317 SI

## II. Plaintiffs' Releases Bar Their State Law, Collective, and Class Action Claims

### A. Amdocs Pled the Affirmative Defense of Waiver in its Answer.

Incredibly, Plaintiffs argue that Amdocs did not plead Plaintiffs' waivers as an affirmative defense, and therefore cannot argue the point in its Motion for Summary Judgment. This point, in fact, was pled as Affirmative Defense 10 in Amdocs' Answer to Plaintiffs' Third Amended Complaint, which reads: "Plaintiffs' TAC and each alleged cause of action are barred, in whole or in part, by the doctrine of waiver." (Defendant's Answer to TAC, 7:14-16).

Amdocs's affirmative defense was sufficiently pled. In fact, the same affirmative defense was pled to this Court by the defendant in Kelly v. City & County of San Francisco, 2008 U.S. Dist. LEXIS 108871 (N.D. Cal. June 30, 2008) (enforcing a similar release, where defendant pled "that all or part of the claims are barred by the equitable doctrines of laches, waiver, estoppel and unclean hands.") (See C 05-1287 SI, D.I. 6, filed 4/21/05).

Plaintiffs cannot, in good faith, argue that the language of Amdocs' affirmative defense is insufficient or prejudicial. First, Plaintiffs readily acknowledge that they were aware that Amdocs pled waiver. (Pls' Opp., p. 13, fn. 3). Plaintiffs signed the releases at issue in the present motion, and thus cannot claim that they were unaware of their existence. Even if a technical failure existed in Amdocs's pleadings, which is not the case here, consideration of the affirmative defense is proper. Bergquist, 399 F. Supp. 2d at 1325 (holding "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.") (internal citations omitted); Pellerin, 432 F.Supp.2d at 664-65 (holding court could address an affirmative defense that defendant failed to assert in its

---

provided customer service and training on the employer's software, and never consulted with customers about their business practices. Eicher, at 1370.

- 9 -

Answer, because no unfair surprise resulted to plaintiff). The Court properly considered the meaning and effect of Plaintiffs' releases in Kelly following that defendant's affirmative defense of waiver. Likewise, this Court should proceed to evaluate the meaning and effect of Plaintiffs' releases in this case.

### B. The Releases Prohibit Plaintiffs' Request for Class and Collective Relief.

Plaintiffs do not dispute that they each executed a severance agreement with Amdocs, for which they received sufficient financial consideration. (Schussel Dep. 105:6-9; Santiago Dep. 89:19-21). Plaintiffs agreed:

> not to enter into any suit, action, or other proceeding at law, or in equity, or to prosecute further any existing suit or action that might presently exist, or to make any claim or demand of any kind or nature against Amdocs.

(Santiago Dep. 89:4-90:15, Ex. 30 attached thereto; Schussel Dep. 105:25-111:2, Ex. 8 attached thereto). Plaintiffs also do not dispute that, at the time they executed these releases, they understood they were waiving their right to sue Amdocs. (Santiago Dep. 90:13-15; Schussel Dep. 110:4-11). Instead, Plaintiffs argue that their agreements, and the promises in those agreements, do not apply to them. Plaintiffs further ignore the actual language that bars this action from proceeding.

"California law strongly favors the settlement of disputes and the enforcement of releases." Jimenez v. JP Morgan Chase & Co., 2008 WL 2036896 (S.D. Cal. May 8, 2008). Plaintiffs nevertheless claim that because they cannot, as a matter of law, waive their individual rights under the FLSA, a waiver of class relief under the FLSA is not enforceable.[6] This Court has rejected that argument. Lu v. AT&T, 2011 WL 2470268 (N.D. Cal. Jun. 21, 2011) (enforcing employer's

---

[6] To be clear, Amdocs does not argue here that Plaintiffs waived their right to seek individual relief under the FLSA. However, Plaintiffs' individual claims under the FLSA are properly dismissed, irrespective of their release of claims, because Plaintiffs are exempt under 29 C.F.R. §541.400.

release and holding that plaintiff was barred from bringing a collective action under the FLSA, noting that the limitation of FLSA waivers "applies only to an employee's **substantive** rights under the FLSA, not his **procedural** rights. The right to bring a collective action under the FLSA is a procedural, not a substantive one.") (emphasis in original). Plaintiffs have no right to proceed with class or collective claims against Amdocs on behalf of others.

This issue was clearly decided by this Court in Kelly, 2008 U.S. Dist. LEXIS 108871, at *14. Enforcing virtually identical release language, this Court found that Kelly's covenant not to sue barred the plaintiffs from bringing a class or collective action against their former employer, even where such class claims arose under the FLSA. Id. Plaintiffs make no attempt to distinguish the facts in this case from Kelly. They could not, because Kelly is on all fours with this matter. When Plaintiffs promised not to sue Amdocs, and executed general releases, they gave up the right to file a class or collective action against Amdocs. Reynov v. ADP Claims Svcs. Group, Inc., 2007 WL 5307977 (N.D. Cal. Apr. 30, 2007).

### C.  Plaintiffs Waived Their Wage Claims Under California State Law.

The general release and covenant not to sue that Plaintiffs executed waived all California state law claims against Amdocs. Amdocs paid Plaintiffs all wages that were concededly owed to them. (Howell Decl. ¶ 6). California Civil Code § 1542 prohibits employers from conditioning the receipt of due wages upon the execution of a release. However, "wages are not 'due' if there is a good faith dispute as to whether they are owed." Reynov, 2007 WL 5307977 at *3.

Plaintiffs argue that there was no "bona fide dispute" because "nothing suggests Plaintiffs and Amdocs ever discussed any potential overtime claims." (Pls. Opposition 19:17-23). Plaintiffs' position, however, has been expressly rejected by this Court. In Reynov, the Court found that an employer's belief that an employee is exempt under the FLSA constitutes a "good faith" dispute. Id. Further, the court found the plaintiff's claim that he was unaware of his potential

overtime claims at the time he executed the release as "unavailing." Instead, the court noted that, "the crucial fact is that Reynov accepted substantial compensation to settle a bona fide dispute." Id. In any event, Plaintiffs admit that they were aware of their overtime claims during their employment with Amdocs, and before they executed their release. (Santiago Dep. 42:3-19).[7]

### D. The NLRA Does Not Bar Plaintiffs' Releases.

Plaintiffs' argument that the NLRA bars enforcement Plaintiffs' releases fails for at least three reasons. First, Plaintiff fails to cite to any applicable legal authority to support the proposition that releases and covenants not to sue, executed for valuable consideration and with the opportunity for review by counsel, are to be treated the same as mandatory arbitration clauses executed at the inception of employment. Even if the analysis to arbitration agreements entered at the inception of the relationship should apply, the Supreme Court's decision in AT&T Mobility v. Concepcion disabused the notion that agreements limiting the right to proceed on a class action or collective action violate federal law. Concepcion, 131 S.Ct. 1740 (2011).

Second, Plaintiffs ignore the fact that § 7 of the NLRA not only confers the right to engage in concerted activity, it also confers the equal right to **refrain from** concerted activity. 29 U.S.C. § 157. Plaintiffs do not dispute that they executed their release with Amdocs voluntarily, for valuable consideration, and with the opportunity to review the meaning and effect of their agreement with an attorney. (Schussel Dep. 105:25-111:2; Ex. 8; Santiago Dep. Ex. 30). Plaintiffs voluntarily chose to waive their rights. Their election to do so should be respected by this

---

[7] Kurian v. U.S. Mortgage Capital, Inc., 2008 WL 2405998 at *9, is inapplicable here. In Kurian, the employer failed to pay wages concededly due prior to the plaintiff/appellant prior to the execution of the release agreement. In this case, however, wages concededly due were paid prior to execution of the release agreement. (Howell Decl. ¶ 6). In addition, unlike the plaintiff/appellant in Kurian, Plaintiffs were well aware of their potential overtime claims at the time they executed their release and accepted Amdocs's severance payment in exchange. (Santiago Dep. 42:3-19).

- 12 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - Case No. C 10-04317 SI

Court. Eviscerating their private agreement in the name of the NLRA would violate Plaintiffs' § 7 rights to refrain from engaging in concerted activity.

Third, whether the agreement violates the NLRA is a matter within the primary jurisdiction of the National Labor Relations Board, and federal courts "must defer to [its] exclusive competence." <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236, 245 (1959). If Plaintiffs believed that Amdocs violated the NLRA, whether through the execution of Plaintiffs' releases or as a result of any conduct during the employment relationship, Plaintiffs had six months to file a charge with the NLRB. 29 U.S.C. § 160(b). They did not do so, despite the fact that their Releases clearly permitted them to pursue any complaints with any federal, state or local government agency. (Santiago Dep. Ex. 30; Schussel Dep. Ex. 8, ¶ 7). Their time to invoke the NLRB's jurisdiction has long passed, and issues relating to the NLRA are moot.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

DATED: October 11, 2011     By: _____
Michael S. Kun
Amie E. Needham
Laura M. Jordan
Lauren M. Bruning
Attorneys for Defendant AMDOCS, INC.

- 13 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - Case No. C 10-04317 SI